UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| STEPHANIE LEE PELIO,<br><br>          Plaintiff,<br><br>   v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>          Defendant. | Case No. 3:14-cv-05165-KLS<br><br>ORDER AFFIRMING DEFENDANT'S DECISION TO DENY BENEFITS |

Plaintiff has brought this matter for judicial review of defendant's denial of plaintiff's application for supplemental security income ("SSI") benefits. Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73 and Local Rule MJR 13, the parties have consented to have this matter heard by the undersigned Magistrate Judge. After reviewing the parties' briefs and the remaining record, the Court hereby finds that for the reasons set forth below, defendant's decision to deny benefits should be affirmed.

FACTUAL AND PROCEDURAL HISTORY

On September 22, 2010, plaintiff filed an application for SSI benefits, alleging disability as of September 1, 1994. See ECF #11, Administrative Record ("AR") 17. That application was denied upon initial administrative review on January 27, 2011, and on reconsideration on August 26, 2011. See id. A hearing was held before an administrative law judge ("ALJ") on August 3, 2012, at which plaintiff, represented by counsel, appeared and testified, as did a vocational expert. See AR 36-72.

ORDER - 1

In a decision dated September 14, 2012, the ALJ determined plaintiff to be not disabled. See AR 17-31. Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on January 14, 2014, making that decision the final decision of the Commissioner of Social Security (the "Commissioner"). See AR 1; 20 C.F.R. § 416.1481. On March 4, 2014, plaintiff filed a complaint in this Court seeking judicial review of the Commissioner's final decision. See ECF #3. The administrative record was filed with the Court on May 5, 2014. See ECF #11. The parties have completed their briefing, and thus this matter is now ripe for the Court's review.

Plaintiff argues defendant's decision to deny benefits should be reversed and remanded for an award of benefits, or in the alternative for further administrative proceedings, because the ALJ erred: (1) in finding plaintiff's mental impairments did not meet or medically equal the criteria of 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.04 and § 12.06; (2) in assessing her residual functional capacity; and (3) in ignoring vocational expert testimony that she would be unable to obtain or maintain substantial gainful activity. For the reasons set forth below, however, the Court disagrees that the ALJ erred as alleged, and thus in determining plaintiff to be not disabled, and therefore finds defendant's decision to deny benefits should be affirmed.

## DISCUSSION

The determination of the Commissioner that a claimant is not disabled must be upheld by the Court, if the "proper legal standards" have been applied by the Commissioner, and the "substantial evidence in the record as a whole supports" that determination. Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); see also Batson v. Commissioner of Social Security Admin., 359 F.3d 1190, 1193 (9th Cir. 2004); Carr v. Sullivan, 772 F.Supp. 522, 525 (E.D. Wash. 1991) ("A decision supported by substantial evidence will, nevertheless, be set aside if the

ORDER - 2

proper legal standards were not applied in weighing the evidence and making the decision.") (citing Brawner v. Secretary of Health and Human Services, 839 F.2d 432, 433 (9th Cir. 1987)).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation omitted); see also Batson, 359 F.3d at 1193 ("[T]he Commissioner's findings are upheld if supported by inferences reasonably drawn from the record."). "The substantial evidence test requires that the reviewing court determine" whether the Commissioner's decision is "supported by more than a scintilla of evidence, although less than a preponderance of the evidence is required." Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975). "If the evidence admits of more than one rational interpretation," the Commissioner's decision must be upheld. Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984) ("Where there is conflicting evidence sufficient to support either outcome, we must affirm the decision actually made.") (quoting Rhinehart v. Finch, 438 F.2d 920, 921 (9th Cir. 1971)). [1]

I.   The ALJ's Step Three Determination

Defendant employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. See 20 C.F.R. § 416.920. If the claimant is found disabled or not disabled at any particular step thereof, the disability determination is made at that step, and the sequential evaluation process ends. See id. At step three of that process, the ALJ must evaluate the

---

[1] As the Ninth Circuit has further explained:

> . . . It is immaterial that the evidence in a case would permit a different conclusion than that which the [Commissioner] reached.  If the [Commissioner]'s findings are supported by substantial evidence, the courts are required to accept them.  It is the function of the [Commissioner], and not the court's to resolve conflicts in the evidence.  While the court may not try the case de novo, neither may it abdicate its traditional function of review.  It must scrutinize the record as a whole to determine whether the [Commissioner]'s conclusions are rational.  If they are . . . they must be upheld.

Sorenson, 514 F.2d at 1119 n.10.

ORDER - 3

claimant's impairments to see if they meet or medically equal any of the impairments listed in 20 C.F. R. Part 404, Subpart P, Appendix 1 (the "Listings"). See Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999); 20 C.F.R § 416.920(d). If any of the claimant's impairments meet or medically equal the criteria of a listed impairment, he or she is deemed disabled. Id. The burden of proof is on the claimant to establish a listed impairment is met or medically equaled. See Tacket, 180 F.3d at 1098. "A generalized assertion of functional problems," however, "is not enough to establish disability at step three." Id. at 1100 (citing 20 C.F.R. § 404.1526).

A mental or physical impairment "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 416.908. It must be established by medical evidence "consisting of signs, symptoms, and laboratory findings." Id.; see also Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 *2 (determination that is conducted at step three must be made on basis of medical factors alone). An impairment meets a listed impairment "only when it manifests the specific findings described in the set of medical criteria for that listed impairment." SSR 83-19, 1983 WL 31248 *2.

An impairment, or combination of impairments, equals a listed impairment "only if the medical findings (defined as a set of symptoms, signs, and laboratory findings) are at least equivalent in severity to the set of medical findings for the listed impairment." Id.; see also Sullivan v. Zebley, 493 U.S. 521, 531 (1990) ("For a claimant to qualify for benefits by showing that his unlisted impairment, or combination of impairments, is 'equivalent' to a listed impairment, he must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment.") (emphasis in original). However, "symptoms alone" will not justify a finding of equivalence. Id. The ALJ also "is not required to discuss the combined effects of a

ORDER - 4

claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence." Burch v. Barnhart, 400 F.3d 676, 683 (9th Cir. 2005).

The ALJ need not "state why a claimant failed to satisfy every different section of the listing of impairments." Gonzalez v. Sullivan, 914 F.2d 1197, 1201 (9th Cir. 1990) (finding ALJ did not err in failing to state what evidence supported conclusion that, or discuss why, claimant's impairments did not meet or exceed Listings). This is particularly true where, as noted above, the claimant has failed to set forth any reasons as to why the Listing criteria have been met or equaled. Lewis v. Apfel, 236 F.3d 503, 514 (9th Cir. 2001) (finding ALJ's failure to discuss combined effect of claimant's impairments was not error, noting claimant offered no theory as to how, or point to any evidence to show, his impairments combined to equal a listed impairment).

The ALJ in this case found "[t]he severity of [plaintiff's] impairments, considered singly and in combination," did "not meet or medically equal the criteria of [L]istings 12.04 and 12.06." AR 21.  In so finding, the ALJ stated that plaintiff had a mild restriction in activities of daily living, moderate difficulties in social functioning and concentration, persistence or pace, and no episodes of decompensation of extended duration. See AR 21-22.  Because plaintiff's mental impairments did "not cause at least two 'marked' limitations or one 'marked' limitation and 'repeated' episodes of decompensation, each of extended duration," she further found the "'paragraph B' criteria" were "not satisfied."[2] AR 22.  The ALJ also found the "paragraph C" criteria were not satisfied. See id.

---

[2] With respect to each mental disorder contained in the Listings, 20 C.F.R. Part 404, Subpart P, Appendix 1, §12.00A states in relevant part:

> Each listing, except 12.05 and 12.09, consists of a statement describing the disorder(s) addressed by the listing, paragraph A criteria (a set of medical findings), and paragraph B criteria (a set of impairment-related functional limitations). There are additional functional criteria (paragraph C criteria) in 12.02, 12.03, 12.04, and 12.06 . . . We will assess the

ORDER - 5

In challenging the ALJ's step three determination, plaintiff asserts that determination is "in complete contradiction of the medical records of [her] treating providers," who "noted that [her] mental health issues would interfere with any employment she was able to obtain." ECF #12, p. 5. But plaintiff points to nothing in the medical source evidence that actually shows this to be the case, at least to the extent that she was disabled under the Listings. Indeed, while the

---

paragraph B criteria before we apply the paragraph C criteria. We will assess the paragraph C criteria only if we find that the paragraph B criteria are not satisfied. We will find that you have a listed impairment if the diagnostic description in the introductory paragraph and the criteria of both paragraphs A and B (or A and C, when appropriate) of the listed impairment are satisfied.

Listing 12.04 reads in relevant part:

> 12.04 Affective Disorders: Characterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome. Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation.
>
> The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in C are satisfied.
>
> . . .
>
> B. Resulting in at least two of the following:
>
> 1. Marked restriction of activities of daily living; or
>
> 2. Marked difficulties in maintaining social functioning; or
>
> 3. Marked difficulties in maintaining concentration, persistence, or pace; or
>
> 4. Repeated episodes of decompensation, each of extended duration; . . .

Listing 12.06 in turn reads in relevant part:

> 12.06 Anxiety Related Disorders: In these disorders anxiety is either the predominant disturbance or it is experienced if the individual attempts to master symptoms; for example, confronting the dreaded object or situation in a phobic disorder or resisting the obsessions or compulsions in obsessive compulsive disorders.
>
> The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in both A and C are satisfied.
>
> . . .
>
> B. Resulting in at least two of the following:
>
> 1. Marked restriction of activities of daily living; or
>
> 2. Marked difficulties in maintaining social functioning; or
>
> 3. Marked difficulties in maintaining concentration, persistence, or pace; or
>
> 4. Repeated episodes of decompensation, each of extended duration.

There is no issue as to whether plaintiff's mental impairments met the A paragraph criteria of Listings § 12.04 and § 12.06, and plaintiff has not argued the ALJ erred in finding the "paragraph C" criteria were not satisfied.

ORDER - 6

medical evidence in the record does show – as found by the ALJ – that she has mental health impairments resulting in *some* impact on her ability to function, no medical source actually has opined that that impact rises to the level of severity contemplated by the Listings, including that of examining psychologist Barry A. Carlaw, Ph.D.[3] See AR 288-300.

Plaintiff next argues the global assessment of functioning ("GAF") scores she received from her mental health counselors that reached as low as 38 establish Listing-level severity.[4] While a GAF score is "relevant evidence" of a claimant's ability to function mentally, it is "a *subjective* determination based on a scale of 100 to 1 of 'the clinician's judgment of the individual's overall level of functioning.'" Pisciotta, 500 F.3d at 1076 n.1 (emphasis added); England, 490 F.3d at 1023, n.8. In this case, though, the ALJ found plaintiff to be less than fully credible concerning her subjective complaints (see AR 24-27), a finding plaintiff has not properly challenged.[5] Nor has plaintiff challenged the reasons the ALJ gave for rejecting that low of a GAF score. See AR 29. This argument thus is without merit as well.

Plaintiff also points to comments by treatment providers concerning certain difficulties she was having she asserts is indicative of Listing-level severity. Those comments, however, clearly reflect plaintiff's own self-reporting, and as just discussed plaintiff has failed to show any error in regard to the ALJ's adverse credibility determination. See ECF #12, pp. 7-8 (citing AR

---

[3] Plaintiff points to Dr. Carlaw's statement that in terms of work tolerance, her attention deficit disorder "predicts some slowing in speed and of response, some potential for inaccuracy and decreased productivity over a work shift" (AR 299), but *some* slowing and the *potential* for inaccuracy and decreased productivity hardly meets or equates to the level of functional impairment demanded of Listings 12.04 and 12.06.

[4] "A GAF score of 31-40 indicates some impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) or major impairment in several areas such as work or school, family relations, judgment, thinking or mood." White v. Commissioner of Social Sec., 572 F.3d 272, 276 (6th Cir. 2009) (quoting Edwards v. Barnhart, 383 F.Supp.2d 920, 924 n. 1 (E.D.Mich. 2005)).

[5] Plaintiff does take issue with the ALJ's adverse credibility determination, but only in her reply brief. See ECF #14, pp. 3-4; see Paladin Associates., Inc. v. Montana Power Co., 328 F.3d 1145, 1164 (9th Cir. 2003) (by failing to make argument in opening brief, objection to district court's grant of summary judgment was waived); Kim v. Kang, 154 F.3d 996, 1000 (9th Cir.1998) (matters on appeal not specifically and distinctly argued in opening brief ordinarily will not be considered).

ORDER - 7

330, 333, 342, 364, 377-78, 390, 416, 679, 681, 688, 691, 694. Even if those comments could be attributed to the treatment providers themselves, they still fail to establish her mental health impairments met or medically equaled the criteria of Listing 12.04 or Listing 12.06.

Plaintiff points as well to several mental health appointments she missed, but it is far from clear how missing those appointments establish the criteria of Listing 12.04 or Listing 12.06 have been met or medically equaled. That is, plaintiff cites nothing in the record to show her missing the appointments were due solely or largely to her mental health impairments rather than, say, as a result of her own decision not to attend. them  Lastly, plaintiff notes two non-examining psychologists found she had at least moderate impairments in maintaining concentration, persistence, or pace. See ECF #12, p. 8. But, in fact, both medical sources found *no more* than moderate difficulties in that area, which clearly falls short of the required showing of "marked" here at step three. See AR 301-02, 314, 489-90, 502.

II.     The ALJ's Assessment of Plaintiff's Residual Functional Capacity

If a disability determination "cannot be made on the basis of medical factors alone at step three of the evaluation process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." Social Security Ruling 96-8p, 1996 WL 374184 *2.  A claimant's residual functional capacity ("RFC") assessment is used at step four to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. See id.  It thus is what the claimant "can still do despite his or her limitations." Id.

A claimant's residual functional capacity is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. See id.  However, an inability to work must result from the claimant's "physical or mental impairment(s)." Id.  Thus, the ALJ

ORDER - 8

must consider only those limitations and restrictions "attributable to medically determinable impairments." Id.  In assessing a claimant's RFC, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." Id. at *7.

The ALJ found plaintiff had the residual functional capacity:

**. . . to perform light work . . . except she needs the opportunity to alternate between sitting and standing. She can occasionally climb ramps and stairs, and can never climb ropes, ladders, or scaffolds. She can occasionally stoop, balance, reach, crouch, crawl, and kneel. She is able to perform simple, routine, and repetitive tasks in a predictable environment that does not require her to work with the public or to perform tandem work with coworkers. She must avoid concentrated exposure to extremes of heat and cold, as well as avoid concentrated exposure to wetness, humidity, noise, vibration, and hazards.**

AR 23 (emphasis in original). Plaintiff argues the ALJ erred by not addressing the concerns of Dr. Carlaw, but fails to point out which of those concerns the ALJ allegedly failed to address. Nor was there any error in terms of the ALJ's evaluation thereof regarding plaintiff's ability to function, including the ALJ's finding that the RFC assessment accounts for those concerns. See AR 26, 299-300. Plaintiff also is incorrect that Dr. Carlaw had opined that her production would be reduced by 15 percent (see ECF #12, p. 10 (citing AR 71); AR 299-300), and thus the ALJ also did not err by declining to adopt such a limitation.[6] Plaintiff further incorrectly states that non-examining physician Norman Staley, M.D., opined that she "could only ambulate with an assistive device." ECF #12, p. 11. But while Dr. Stalely did assess some functional limitations – consistent with the ALJ's own RFC assessment – based in part on the fact that an assistive device had been prescribed for her by another physician at her request, he did not actually opine

---

[6] The Court also finds no error in the ALJ's treatment of Dr. Carlaw's statement that plaintiff would be predicted to have "some slowing in speed and of response," as well as "some potential for inaccuracy and decreased productivity over a work shift." AR 299.  Plaintiff has not shown these limitations are incompatible with the ALJ's finding that she can perform simple, routine, and repetitive tasks in a predictable environment.

ORDER - 9

that she could not ambulate without it. See AR 319, 325.

III.     The ALJ's Step Five Determination

If a claimant cannot perform his or her past relevant work, at step five of the disability evaluation process the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do. See Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. § 416.920(d), (e).  The ALJ can do this through the testimony of a vocational expert or by reference to defendant's Medical-Vocational Guidelines (the "Grids"). Tackett, 180 F.3d at 1100-1101; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2000).

An ALJ's findings will be upheld if the weight of the medical evidence supports the hypothetical posed by the ALJ. See Martinez v. Heckler, 807 F.2d 771, 774 (9th Cir. 1987); Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984).  The vocational expert's testimony therefore must be reliable in light of the medical evidence to qualify as substantial evidence. See Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988).  Accordingly, the ALJ's description of the claimant's disability "must be accurate, detailed, and supported by the medical record." Id. (citations omitted).  The ALJ, however, may omit from that description those limitations he or she finds do not exist. See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

At the hearing, the ALJ posed a hypothetical question to the vocational expert containing substantially the same limitations as were included in the ALJ's assessment of plaintiff's residual functional capacity. See AR 69.  In response to that question, the vocational expert testified that an individual with those limitations – and with the same age, education and work experience as plaintiff – would be able to perform other jobs. See AR 69-70.  Based on the testimony of the vocational expert, the ALJ found plaintiff would be capable of performing other jobs existing in significant numbers in the national economy. See AR 30-31.

ORDER - 10

Plaintiff argues the ALJ erred in not adopting the vocational expert's testimony that if an individual's production was reduced by 15 percent, employment could not be maintained. See AR 71.  But given that as discussed above the evidence in the record does not support such a limitation and thus that the ALJ was not required to include it in his RFC assessment, the ALJ also was not required to adopt the vocational expert's testimony based on that limitation.  The medical evidence in the record – as plaintiff herself admits (see ECF #12, p. 11) – also does not support a finding that she would miss two or three days of work per month due to her migraine headaches as she asserts. Although plaintiff may have testified as to this, again the ALJ found her subjective complaints to be less than wholly credible.

## CONCLUSION

Based on the foregoing discussion, the Court hereby finds the ALJ properly concluded plaintiff was not disabled.  Accordingly, defendant's decision to deny benefits is AFFIRMED.

DATED this 25th day of August, 2014.

Karen L. Strombom
United States Magistrate Judge